BERNARD J. KORNBERG (State Bar No. 252006)
bernard.kornberg@practus.com
PRACTUS, LLP
58 West Portal Ave PMB 782
San Francisco, CA 94127
p: 341.234.6629

Attorneys for Anne Bingham

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNE BINGHAM, an individual,<br><br>    Plaintiff,<br><br>  vs.<br><br>NEWREZ LLC dba SHELLPOINT MORTGAGE SERVICING, a Delaware Limited Liability Corporation; TRANS UNION, LLC, a Delaware Limited Liability Corporation; EQUIFAX INFORMATION SERVICES, LLC, a Georgia Limited Liability Corporation; and EXPERIAN INFORMATION SOLUTIONS, INC., an Ohio Corporation.<br><br>    Defendants. | Case No.<br><br>**COMPLAINT FOR**<br><br>**(1) Fair Credit Reporting Act, 15 U.S.C. §§ 1681,** *et seq.***;**<br><br>**(2) Fair Credit Reporting Act, 15 U.S.C. §§ 1681,** *et seq***;**<br><br>**(3) California Consumer Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785.1,** *et seq***;**<br><br>**(4) California Consumer Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785.1,** *et seq***;**<br><br>**(5) Promissory Estoppel;**<br><br>**(6) Defamation; and**<br><br>**(7) Violations Of California's Unlawful Business Practices Act, Cal. Bus. & Prof. Code § 17200.** *et. seq.* |

Anne Bingham ("Plaintiff") allege as follows:

**JURISDICTION AND VENUE**

1.   Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States, 15 U.S.C. § 1681p, and pursuant to 28 U.S.C. § 1367 for pendent state law claims.

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the acts and transactions occurred here, Plaintiff resides here, one of the Defendants resides here, and all Defendants regularly transact business here.

## PARTIES

3. Plaintiff is natural person who resides in Los Angeles County, California.

4. Defendant Newrez LLC dba Shellpoint Mortgage Servicing ("Shellpoint") is a Delaware corporation with its principal place of business located at Fort Washington, PA. Shellpoint is a regular furnisher of consumer information to credit reporting agencies.

5. Defendant Trans Union, LLC ("Trans Union") is a Delaware corporation with its principal place of business located at Chicago, IL. Trans Union is in the business of reporting information about credit accounts to third party users of credit information.

6. Defendant Equifax Information Services, LLC ("Equifax") is a Georgia corporation with its principal place of business located at Atlanta, GA. Equifax is in the business of reporting information about credit accounts to third party users of credit information.

7. Defendant Experian Information Solutions, Inc. ("Experian") is an Ohio corporation with its principal place of business located at Cosa Mesa, CA. Experian is in the business of reporting information about credit accounts to third party users of credit information.

## GENERAL ALLEGATIONS

### The Plaintiff

8. Plaintiff is the owner of her residence, a single-family home located in Calabasas, California.

9. Plaintiff also owns nine separate investment properties within California.

10. Each real property owned by Plaintiff is subject to one or more mortgage loans.

11. During and due to the COVID-19 pandemic, Plaintiff lost her job and took out home equity loans against her properties, including her residence, to make ends meet.

12. Because Plaintiff was unemployed, the only loans available to her were short term, high interest rate loans. Many of these loans will mature in April of 2022 or shortly thereafter.

13. Plaintiff is now employed with regular income and needs to refinance her high interest, short term loans so that she can keep her properties, including her residence.

14. In addition, Plaintiff regularly purchases additional investment properties. If her credit score does not indicate she is creditworthy, she is unable to secure purchase money loans at market interest rates to make these purchases.

15. For these reasons, having a high credit score is essential to Plaintiff keeping her residence, along with her financial and emotional wellbeing.

16. Plaintiff had, until the wrongful acts of furnisher Shellpoint and credit reporting agencies Trans Union, Equifax, and Experian (collectively, the "CRAs"), excellent credit. Plaintiff brings this action to correct her credit and the damages caused by the actions of Defendants.

**The CARES Act Modifies Credit Reporting Obligations**

17. On March 13, 2020, a national emergency was declared as to the COVID-19 Pandemic. That emergency declaration has been extended indefinitely and goes on to this day.

18. In response to the COVID-19 Pandemic, on March 27, 2020, the "Coronavirus Aid, Relief, and Economic Security Act'' or the ''CARES Act'' went into effect as Public Law 116-136.

19. "Congress acted by passing the Coronavirus Aid, Relief, and Economic

Security Act [] billed in part as a comprehensive COVID-19 relief plan. Recognizing the importance of consumer credit reporting, the CARES Act included provisions which attempt to protect consumer credit if the consumer enters into an 'accommodation' with a furnisher of consumer credit data."[1]

20. Section 4021 of the CARES act modifies the Fair Credit Reporting Act (the "FCRA") to protect the credit of consumer such as Plaintiff who are adversely affected by the COVID-19 Pandemic.

21. Under section 4021 of the CARES Act, during the pendency of the national emergency, and for 120 days thereafter, "if a furnisher makes an accommodation with respect to 1 or more payments on a credit obligation or account of a consumer, and the consumer makes the payments or is not required to make 1 or more payments pursuant to the accommodation, the furnisher shall . . . report the credit obligation or account as current."

22. The Consumer Financial Protection Bureau (the "CFPB") has provided a guidance as to application of section 4021 of the CARES Act. As set forth in the guidance,

> If the credit obligation or account was current before the accommodation, during the accommodation the furnisher must continue to report the credit obligation or account as current.
>
> If the credit obligation or account was delinquent before the accommodation, during the accommodation the furnisher cannot advance the delinquent status.

A copy of this guidance is attached to the Complaint as Exhibit A.

---

[1] American Bar Association, *Defining Accurate Credit Reporting Under the CARES Act During the Pandemic*, Oct. 7, 2020, https://www.americanbar.org/groups/business_law/publications/blt/2020/10/credit-reporting/

23. An accommodation is in turned defined as "includes an agreement to defer 1 or more payments, make a partial payment, forbear any delinquent amounts, modify a loan or contract, or any other assistance or relief granted to a consumer who is affected by the coronavirus disease 2019 (COVID–19) pandemic during the covered period."

24. Pursuant to the CFPB guidance, "[a]n accommodation includes assistance or relief that is granted voluntarily or pursuant to a statutory or regulatory requirement."

### Shellpoint and the CRAs Refuse to Comply with the FCRA and the CARES Act's Credit Reporting Obligations

25. One of Plaintiff's investment properties was the real property located at 3484 Corpus Christi St., Simi Valley, CA 93063 (the "Corpus Christi Property"). Plaintiff purchased the Corpus Christi Property on January 25, 2011. Plaintiff was, until recently, the sole owner of the Corpus Christi Property.

26. The Corpus Christi Property was subject to a purchase money mortgage loan (the "Loan") held, to the best of Plaintiff's knowledge, by the Federal National Mortgage Association ("Fannie Mae"). The servicer of that Loan since January 1, 2020, is Shellpoint.

27. Until April 1, 2020, Plaintiff made every payment owed on the Loan under the loan documents.

28. Due to the COVID-19 pandemic, the tenant in the Corpus Christi Property ceased paying rent. At the same time, the County of Los Angeles enacted an emergency eviction moratorium which precluded evictions on residential tenants affected by the COVID-19 pandemic.

29. As Plaintiff was not receiving rent on the Corpus Christi Property, nor could Plaintiff relet the premises to another tenant, Plaintiff sought a forbearance under section 4022 of the CARES Act. This section provides for up to 18 months forbearance on foreclose for borrowers of federally backed mortgage loans when

"experiencing a financial hardship due, directly or indirectly, to the COVID–19 emergency."

30. As required by law, Shellpoint granted Plaintiff a forbearance excusing all payments effective April 1, 2020, to June 30, 2020. This forbearance was extended several times such that the last day of forbearance was September 30, 2021, the end of the 18-month maximum period provided for under section 4402 of the CARES Act.

31. During the forbearance period, Shellpoint did not report Plaintiff as delinquent.

32. At the conclusion of the forbearance period, the tenant of the Corpus Christi Property was still unable to pay the rent due. Plaintiff thus remained "affected by the coronavirus disease 2019 (COVID–19) pandemic."

33. Plaintiff had to sell the Corpus Christi Property due to this continued non-payment. The sale closed on February 23, 2022.

34. In September of 2021, the month before the forbearance was set to expire, Shellpoint mailed a letter to Plaintiff setting forth that Plaintiff was in a forbearance and may be eligible for several potential loss mitigation options, including a loan modification. A copy of this letter is attached as <u>Exhibit B</u> to the Complaint.

35. On October 7, well within the grace period for payment set by the loan documents, Plaintiff contacted a Shellpoint representative by phone. Plaintiff was informed that she was in arrears on the Loan due to the non-payment during the forbearance period. Plaintiff discussed her loss mitigation options with the Shellpoint representative. Shellpoint offered Plaintiff several options, including a loan modification or a payment deferral program. At the time, Plaintiff agreed to a payment deferral program.

36. On October 11, Plaintiff spoke again to a Shellpoint representative by phone. During the call, Plaintiff informed Shellpoint that she instead wished to

proceed with a loan modification agreement.  Shellpoint orally granted the request during the call.

37. Plaintiff was informed that she would be put on a trial payment plan which required her to make three trial payments on December 1, 2021, January 1, 2022, and February 1, 2022 (the "Trial Payment Plan").  Plaintiff was further informed that once those payments were made, she would be offered a permanent loan modification.

38. Shortly thereafter, Plaintiff received a letter from Shellpoint dated October 13, 2021.  This letter states that

> This notice is to confirm that we have recently received an application and/or document(s) in support of loss mitigation assistance for the above-referenced account. We have determined that your application is already complete. . . *The completion of your application has granted you protection from foreclosure while we evaluate the application.*

A copy of this letter is attached to the Complaint as Exhibit C.

39. In November of 2021, Plaintiff received a Streamlined Modification Solicitation Letter memorializing the terms of the Trial Payment Plan.  The payments schedule matched the terms of the Trial Payment Plan Shellpoint already agreed to provide Plaintiff during the October 11 phone call.  A copy of this letter is attached to the Complaint as Exhibit D.

40. Plaintiff made all three trial payments early, with the first payment made on November 30, 2021, and the second and third payment both made on December 28, 2021.

41. On or about January 21, 2022, Shellpoint sent plaintiff a loan modification agreement, which she signed and returned.  A copy of the Loan Modification Agreement is attached to the Complaint as Exhibit E.

7
COMPLAINT

42. Plaintiff has made all payments due on the modified Loan and remains current.

43. Having no reason to believe her credit remained anything but sterling, Plaintiff sought to refinance mortgage loans on certain other investment properties that had matured or where the rate adjusted.

44. During the application process Plaintiff discovered, to her surprise and horror, that her credit reports showed her 30 days late on her obligation to Shellpoint for October of 2021 and 60 days late for November and December of 2021.

45. Due to the reporting of three late mortgage payments, Plaintiff's loan broker informed he that she was not eligible for financing.

46. The reporting of Plaintiff's loan as late was inaccurate and misleading, and in violation of section 4021 of the CARES Act.

47. Prior to April 1, 2020, Plaintiff was current on the Loan pursuant to the Loan documents.

48. From April 1, 2020, to September 30, 2021, Plaintiff was under a section 4402 Cares Act Forbearance and excused by law from making any payment on the Loan due to being affected by the COVID-19 pandemic.

49. Shellpoint furnished information to the CRAs during this time stating forth that Plaintiff was current on the Loan.

50. On October 1, and until the Corpus Christi Property was sold, Plaintiff's ability to pay on the Loan was affected by the coronavirus disease 2019 (COVID–19) pandemic due to the failure of her tenant to pay rent.

51. Plaintiff informed Shellpoint of these facts during her October 7 and 11 conversations with Shellpoint, along in numerous letters and calls made after that time.

52. Pursuant to Shellpoint's oral agreement with Plaintiff on October 11, the October 13 Letter from Shellpoint, and the Streamlined Modification Solicitation Letter, Plaintiff was excused from making the October 2021 payment

and was required to make a partial payment in November 2021, December 2021, and January 2022.

53. The Trial Payment Plan thus constituted an Accommodation under section 4021 of the CARES Act.

54. Plaintiff fully complied with her obligations under the Trial Payment Plan.

55. Before October 1, 2021, Shellpoint never reported the Loan as delinquent.

56. When Shellpoint furnished information to the CRAs regarding the status of the loan for October 2021 to December 2021, it was required under section 4021 of the CARES Act to report the Loan as current.

57. Even if the CARES Act had not been enacted, the reporting of the Loan is past due by 30 and 60 days is misleading and inaccurate.

58. Shellpoint furnished a report stating that Plaintiff was current on the Loan for September.

59. When Shellpoint next furnished information on the Loan for October 2021, Plaintiff was specifically excused from making any payment on the Loan by the Trial Payment Plan.

60. In fact, Plaintiff was told by Shellpoint that any attempt to make payments until the Trial Payment Plan was in place would be rejected.

61. Shellpoint directly solicited Plaintiff to accept post-COVID 19 forbearance loss mitigation option.

62. During the numerous conversations, Shellpoint never informed Plaintiff that it would report her as delinquent if she made all payments under a post-COVID-19 forbearance loss mitigation agreement.

63. Plaintiff made all payments owed under the Trial Payment Plan in November and December.

64. The Trial Payment Plan constitutes a binding obligation on Shellpoint.

65. Plaintiff was current on the payments required by Shellpoint under the Trial Payment Plan.

66. When Shellpoint furnishes information on a loan, Shellpoint can separately indicate to the CRAs whether (i) the borrower is current on the loan obligation; and (ii) whether a borrower is under a payment plan.

67. For calculating creditworthiness, the CRAs treat a delinquency by a borrower more severely than payments by a borrower under a modified payment plan.

68. Therefore, by furnishing information stating that Plaintiff was over 30 days past due on her payments, rather than stating that Plaintiff was current under a payment plan, Shellpoint furnished inaccurate and misleading information.

### Plaintiff's Requests for Reinvestigation and Correction

69. Plaintiff made requests for reinvestigation with the CRAs, including Defendants Experian, Equifax, and Trans Union to dispute the erroneous credit reporting by defendant Shellpoint through the established procedures established by each CRA.

70. In making these requests for reinvestigation with the CRAs, Plaintiff provided the same facts as she did to Shellpoint.

71. Equifax and Experian both provided written responses to Plaintiff indicating that they had forwarded the dispute to Shellpoint.

72. Trans Union failed to provide a written response to Plaintiff but has orally confirmed to Plaintiff that it forwarded the dispute to Shellpoint.

73. Notwithstanding Plaintiff's efforts, the CRAs have informed Plaintiff, either orally or in writing, of their intent to continue publishing the inaccurate information and do in fact continues to publish and disseminate such inaccurate information to other third parties, persons, entities, and credit grantors.

74. Despite Plaintiff's efforts, the CRAs has never: (i) reviewed the documents provided by Plaintiff, (ii) contacted Plaintiff to follow up on, verify

and/or elicit more specific information about Plaintiff's disputes; (iii) contacted any third parties that would have relevant information concerning Plaintiff's disputes; or (iv) investigated Shellpoint's compliance with the CARES Act.

75. Between January 6, 2022, and January 19, 2022, Plaintiff wrote numerous letters directly to Shellpoint requesting that Shellpoint correct the erroneous credit reporting.

76. Shellpoint responded to these letters. Shellpoint ultimately furnished updated information to the CRAs stating that Plaintiff was current for the December 2021 payment. However, Shellpoint refused to change its reporting as to the October 2021 and November 2021 payment, which are still reported by the CRAs as 30 and 60 days past due.

77. Since September of 2021, the CRAs have prepared and distributed one or more consumer reports, as that term is defined by Section 1681a(d) of the FCRA, pertaining to Plaintiff that contained misleading or inaccurate information related to Plaintiff's account held by Shellpoint.

78. Despite Plaintiff's exhaustive efforts to date, Defendants have nonetheless deliberately, willfully, intentionally, recklessly, and negligently repeatedly failed to perform reasonable investigations/reinvestigations of the above disputes as required by the FCRA, have failed to remove the inaccurate information, have failed to note the disputed status of the inaccurate information and have continued to report the derogatory inaccurate information about the Plaintiff.

79. The CRAs failed to maintain reasonable procedures to prevent Plaintiff's credit information and/or credit files from including inaccurate information related to Plaintiff's account held by Shellpoint.

80. As a result of Defendants' conduct, Plaintiff has been unable to refinance her current loans on her real properties through convencial lenders at or market rate of interest for residential loans for creditworthy borrowers. Instead, she has had to pay non-market rate interest through short-term hard money loans, which

include high fees and interest.

81. As a result of Defendants' conduct, Plaintiff risks foreclosure on her residence and investment properties due to her inability to refinance maturing short-term home equity loans.

82. As a result of Defendants' conduct, Plaintiff has been unable to purchase additional properties as she is not eligible for conventical loans that would make such purchases profitable.

83. Mortgage interest rates have increased recently and are projected to increase further as the year progresses. As a result of Defendants' conduct, when Defendants do correct her credit reports, the mortgage interest rate she will receive will be significantly higher than what she would have received had Defendants complied with the FCRA and state law.

84. As a result of Defendants' conduct, Plaintiff has suffered additional actual damages in the form of emotional distress, including humiliation, embarrassment, and extreme stress.

85. Defendants knew or should have known that their actions violated both federal and state law. Additionally, Defendants could have taken the steps necessary to bring their agent's actions within compliance of these statutes but neglected to do so and failed to adequately review those actions to ensure compliance with said laws.

86. At all times pertinent hereto, Defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

87. At all times pertinent hereto, the conduct of the Defendants, as well as that of their agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal and state laws and the rights of the Plaintiff herein.

## FIRST CAUSE OF ACTION

### (Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.*)

### As to Trans Union, Experian, and Equifax

88. Plaintiff hereby incorporates by reference all prior allegations of this complaint as though fully set forth herein.

89. At all times pertinent hereto, the CRAs were a "person" and a "consumer reporting agency" as those terms are defined by 15 U.S.C. § 1681a(b) and (f).

90. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

91. At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

92. Pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o, the CRAs are liable to the Plaintiff for willfully and negligently failing to comply with the requirements imposed on a consumer reporting agency of information pursuant to 15 U.S.C. § 1681e(b) and § 1681i.

93. The conduct of the CRAs is a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to the Plaintiff.

94. The CRAs are liable to the Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorney's fees and the costs of litigation, as well as such further relief, as may be permitted by law.

## SECOND CAUSE OF ACTION

### (Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.*)

### As to Shellpoint

95. Plaintiff hereby incorporates by reference all prior allegations of this complaint as though fully set forth herein.

96. At all times pertinent hereto Shellpoint was a "person" as that term

defined by 15 U.S.C. § 1681a(b).

97. At all times pertinent hereto Shellpoint was a "furnisher" as that term is used in 15 U.S.C. § 1681s-2(b).

98. Shellpoint violated 15 U.S.C. § 1681s-2(b)(l)(A) by failing to fully and properly investigate Plaintiff's disputes.

99. Shellpoint understood the nature of Plaintiff's disputes when it received notice of the dispute from the CRAs.

100. Shellpoint violated sections 1681n and 1681o of the FCRA by willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. §1681s-2(b).

101. The conduct of the Shellpoint is a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to the Plaintiff.

102. Shellpoint is liable to the Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorney's fees and the costs of litigation, as well as such further relief, as may be permitted by law.

### THIRD CAUSE OF ACTION

### (California Consumer Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785.1, *et seq.*)

### As to Trans Union, Experian, and Equifax

103. Plaintiff hereby incorporates by reference all prior allegations of this complaint as though fully set forth herein.

104. At all times pertinent the CRAs were a "person" and a "consumer credit reporting agency" as those terms are defined by Cal. Civ. Code §§ 1785.4(j) and 1785.3(d), respectively.

105. Plaintiff is a "consumer" as that term is defined by Cal. Civ. Code §§ 1785.3(b) and 1785.6.

106. The above-mentioned consumer reports were "consumer credit reports"

as that term is defined by Cal. Civ. Code § 1785.3(c).

107. Pursuant to Cal. Civ. Code § 1785.31, the CRAs are liable to the Plaintiff for willfully and negligently failing to comply with the requirements imposed on a consumer credit reporting agency pursuant to Cal. Civ. Code § 1785.14(b) and § 1785.16.

108. The conduct of the CRAs is a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to the Plaintiff.

109. The CRAs are liable to the Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorney's fees and the costs of litigation, as well as such further relief, as may be permitted by law.

### FOURTH CAUSE OF ACTION

### (California Consumer Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785.1, *et seq.*)

### As to Shellpoint

110. Plaintiff hereby incorporates by reference all prior allegations of this complaint as though fully set forth herein.

111. At all times pertinent Shellpoint was a "person" who "regularly furnish[es] information" as those terms are defined by Cal. Civ. Code § 1785.25.

112. Plaintiff is a "consumer" as that term is defined by Cal. Civ. Code §§ 1785.3(b) and 1785.6.

113. The above-mentioned consumer reports were "consumer credit reports" as that term is defined by Cal. Civ. Code § 1785.3(c).

114. Failure to accurate furnish credit information as set forth in section 4021 of the CARES Act renders that information incomplete or inaccurate.

115. In violation of Cal. Civ. Code § 1785.25(a), Shellpoint furnished information to consumer credit reporting agencies that they knew or should have known to be inaccurate.

116. Shellpoint is liable to the Plaintiff for willfully and negligently failing to comply with the requirements imposed on furnishers of information Cal. Civ. Code § 1785.25(a).

117. The conduct of the Shellpoint is a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to the Plaintiff.

118. Shellpoint is liable to the Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorney's fees and the costs of litigation, as well as such further relief, as may be permitted by law.

### FIFTH CAUSE OF ACTION

### (Promissory Estoppel)

### As to Shellpoint

119. Plaintiff hereby incorporates by reference all prior allegations of this complaint as though fully set forth herein.

120. Shellpoint clearly and unambiguously represented to Plaintiff that she did not need to make the full past due payment owed on October 1, 2021 but could instead proceed with the Trial Payment Plan.

121. Plaintiff relied on this representation by not making the full past due payment but instead paying on the Trial Payment Plan as instructed by Shellpoint.

122. Plaintiff's reliance was reasonable and foreseeable by Shellpoint.

123. Shellpoint is estopped from treating Plaintiff's loan as in default and reporting the Loan as delinquent from October 2021 to December of 2021.

### SIXTH CAUSE OF ACTION

### (Defamation)

### As to all Defendants

124. Plaintiff hereby incorporates by reference all prior allegations of this complaint as though fully set forth herein.

125. The furnishing of information by Shellpoint that Plaintiff was

delinquent on the Loan from October 2021 to December of 2021 constitutes a publication.

126. The publication was false and defamatory as Plaintiff was current on her obligation per the Trial Payment Plan.

127. The distribution of the credit reports by the CRAs constitutes a republication of this false and defamatory information.

128. Defendants' publication was not privileged.

129. The publication by Defendants is a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to the Plaintiff.

130. Defendants are liable to the Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorney's fees and the costs of litigation, as well as such further relief, as may be permitted by law.

## SEVENTH CAUSE OF ACTION

### (Violations Of California's Unlawful Business Practices Act, Cal. Bus. & Prof. Code § 17200. *et. seq*)

### As to Shellpoint

131. Plaintiff hereby incorporates by reference all prior allegations of this complaint as though fully set forth herein.

132. The furnishing of information by Shellpoint that Plaintiff was delinquent on the Loan from October 2021 to December of 2021 constitutes a fraudulent, unfair, and unlawful act under the UCL.

133. Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin Shellpoint from continuing its unfair, unlawful, and/or deceptive practices.

## PRAYER

Wherefore, Plaintiffs prays for judgment against Defendants as follows:

1. Actual damages;

2. Statutory damages;

3. Punitive damages;

4. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and 1681o;

5. Costs and reasonable attorney's fees pursuant to Cal. Civ. Code § 1731(a)(1); and § 1788.30;

6. An order directing that each Defendant immediately delete all of the inaccurate information from Plaintiff's credit reports and files and cease reporting the inaccurate information to any and all persons and entities to whom they report consumer credit information;

7. An order directing that each Defendant sends Plaintiff's updated and corrected credit report information to all persons and entities to whom they have reported Plaintiff's inaccurate information within the last three years;

8. An injunction against Shellpoint furnishing information to any credit reporting agency that a borrower is delinquent when the borrower is under an COVID-19 Accommodation or making payments pursuant to a temporary payment plan; and

9. For such other relief that the Court deems proper.

## JURY DEMAND

Plaintiff demands a trial by Jury.

DATED: March 2, 2022            PRACTUS, LLP

By: /s/ Bernard J. Kornberg
            BERNARD J. KORNBERG

Attorneys for Anne Bingham